Jamir **SANTIAGO CLEMENTE**, Plaintiff,

v.

**EXECUTIVE AIRLINES**, (American Eagle) Defendant.

No. CIV. 97–1255(PG).

United States District Court, D. Puerto Rico.

June 9, 1998.

Enrique J. Mendoza–Méndez, San Juan, PR, for Plaintiff.

Carmencita Velázquez–Márquez–Márquez & Anita Montaner–Sevillano, San Juan, PR, for Defendant.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiff, Jamir Santiago Clemente ("Santiago"), filed the present action for declaratory, compensatory and punitive damages for alleged violation of her federal rights as protected by the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA") against Executive Airlines. Jurisdiction is alleged pursuant to 42 U.S.C. § 12117(a), which incorporates by reference § 706 of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(f), and 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Plaintiff further invokes this Court's supplemental jurisdiction over her state law claim under Act Number 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 (1982 & Supp.1992) ("Puerto Rico Disabilities Law"). Before the Court are plaintiff's motion for partial summary judgment (Dkt.# 19). defendant's opposition thereto and cross motion for summary judgment (Dkt.. # 24), plaintiff's reply (Dkt.# 32) and defendant's sur-reply (Dkt.# 33).

### I. STANDARD

Under the Federal Rules of Civil Procedure, a summary judgment motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "It is defendant's burden, in moving for summary judgment, to establish that all material facts are undisputed, and that no finder of fact could reasonably find a genuine dispute of material fact and resolve that dispute in the plaintiff's favor." *Rodríguez–Surís v. Montesinos,* 123 F.3d 10, 23 (1st Cir.1997). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court examines the record in the light most favorable to the nonmovant and indulges all reasonable inferences in that party's favor. *See Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir. 1994).

"In operation, summary judgment's role is to pierce the boilerplate of the pleadings and assay the party's proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992). It works in two phases. First, the moving party must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. Once the moving party has properly supported it's motion, the burden shifts to the nonmovant to demonstrate, through specific facts, that a trial-worthy issue remains. *See Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997); *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10, 14 (1st Cir.1996).

When the non–moving party has the burden of proof at trial, it may not rest upon mere conclusory allegations, improbable inference, unsupported speculations or denials in its pleading. Instead, it must set forth

specific facts which arise from definite and competent evidence to establish the existence of a genuine issue for trial. *See Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Wynne v. Tufts Univ. School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992); *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991).

## II. FACTS

Santiago has been employed by American Eagle since December 1, 1991. She started as an intern sometime in December 1991, and was later promoted to support representative in February 1992. She became a flight attendant in November 30, 1994. On August 30, 1995, in a flight route to St. Croix, Santiago complained of ear pain and requested to be relieved from her schedule upon arrival in San Juan. She was not so relieved. Later on, Santiago was diagnosed with otitis media and was ordered rest with a return to work date of September 4, 1995. The pain persisted and Santiago sought treatment from an ENT and reported to the State Insurance Fund ("SIF"). On December 5, 1995, the SIF indicated that, in order to minimize the pressure in her ears, Santiago could only fly in planes with pressurized cabins. SIF's recommendation was put in writing and Santiago gave it to Mrs. Michelle Fajardo, acting In-flight Director for American Eagle. Mrs. Fajardo explained that the airline could not accommodate her in that manner because to do so would be in violation of the terms of the collective bargaining agreement. Mrs. Fajardo then told Santiago that she had two alternatives: she could continue flying without the requested accommodation, or she could resign. Consequently, Santiago continued flying in planes without pressurized cabins. Ultimately, she suffered loss of hearing in her right ear. On march 29, 1996, the SIF ordered that Santiago be grounded until her condition stabilized. Mrs. Fajardo then instructed Santiago to report to a company appointed physician, Dr. Thomas Murphy. Dr. Murphy agreed with the SIF diagnosis and concluded that Santiago would most likely be unable to fly again. At this time, Executive Airlines began looking for job alternatives and Santiago was assigned to a receptionist position and was then promoted to payroll clerk.

Santiago continued her treatment with the SIF. In November 1997, she underwent a series of hearing tests performed by otologist Dr. Fred Talischi, which revealed that her hearing was normal. On January 21, 1998, she had additional hearing tests performed at the request of her medical ENT expert, Dr. Arsuaga. After the tests, Dr. Arsuaga opined that Santiago's hearing capacity is within normal limits bilaterally. His conclusion is that in 1995 Santiago suffered aerotitis and possible damage to the inner ear, but that at the present time she has recovered and has a normal hearing capacity in both ears. Both doctors agree that Santiago may have exaggerated her subjective responses in prior audiology tests.

Plaintiff complains that she is a disabled individual and that defendant's refusal to provide her with a reasonable accommodation is a violation of the ADA.

## III. DISCUSSION

The ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. *See* 42 U.S.C. S 12112(a). To establish a prima facie case, a plaintiff must show: first, that she was disabled within the meaning of the Act; second, that she was able to perform the essential functions of the job with or without reasonable accommodation; and, third, that she was discharged or adversely affected in the terms and conditions of her employment, in whole or in part, because of her disability. *See Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996). In order to state a claim for discrimination under the ADA, plaintiff must sufficiently plead the disability element. The ADA defines the term "disability" as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," (B) "a record of such an impairment," or (C) "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)–(C). Plaintiff claims that this case implicates the first two subsets of the ADA's statutory definition of disability.

## A. "Substantially limits a major life activity"

■ In order to fall under the first of the ADA's disability definitions, a plaintiff must prove three things: "first, that she has a 'physical or mental impairment'; second, that this impairment adversely affects 'a major life activity'; and third, that it does so to a significant extent (or, put more precisely, that the impairment 'substantially limits' her ability to engage in the particular major life activity)." *Abbott v. Bragdon*, 107 F.3d 934, 939 (1st Cir.1997). EEOC regulations interpret "major life activities" as including "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working." 29 C.F.R. § 1630.2(i).[1] The regulations further provide that in evaluating whether an impairment substantially limits an individual's major life activities the Court must consider: (1) the nature and severity of the impairment; (2) the duration and expected duration of the impairment; (3) the permanent long-term impact or expected long-term impact of, or resulting from the impairment. *See* 29 C.F.R. § 1630.2(j)(2). Not all physical impairments rise to the level of disability under the ADA. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir.1995) ("A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.").

■ It is uncontested that at one time, plaintiff suffered from a hearing impairment. However, in its opposition and cross-motion for summary judgment, defendant argues, *inter alia*, that Santiago is not a disabled individual protected by the ADA because her hearing condition was temporary. Plaintiff counters by arguing that the First Circuit Court of Appeals adopted in *Katz v. City Metal Co.*, an interpretation which allows a finding of disability in situations where the impairment is not permanent: " 'although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to the level of a disability.' " 87 F.3d 26, 31 (1st Cir.1996) (citing 2 EEOC Compliance Manual, Interpretations (CCH) § 902.4, ¶ 6884, p. 5319 (1995)). While plaintiff's argument with respect to *Katz* is not entirely groundless, the determination of whether an impairment substantially limits a major life activity must still be made on an individual basis. *See Katz, supra,* at 32.

■ The plaintiff in *Katz* filed suit against his employer for discrimination on the basis of disability. Katz alleged that after suffering a heart attack he had become disabled within the meaning of the ADA. The trial judge entered judgment as a matter of law in favor of defendants holding that plaintiff failed to show he suffered from a permanent disability. The Court of Appeals reversed on the grounds that the trial judge had erroneously concluded, by means of his own medical experience, that suffering a heart attack does not constitute permanent disability.[2] The Court of Appeals reasoned that it was "a very close question" whether Katz offered enough evidence to prove that his impairment constituted a disability under the ADA. It explained that there were issues of fact which should have been left for the jury to decide: "[I]t is at least a debatable question whether, based on Katz's testimony, the jury could conclude that he suffered from a con-

---

1. "The ADA authorizes—indeed 'requires'—the EEOC to 'issue regulations in an accessible format to carry out' the Act. 42 U.S.C. § 12116 (1994). Pursuant to that authority, the EEOC has promulgated regulations, attached to which as an appendix it has compiled guidelines for interpreting the statute." *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 863 (1st Cir.1998).

2. The trial judge in *Katz* ruled as follows when entering judgment as a matter of law:

   "People recover from heart attacks and go on with life's functions. I know, I've done it, and I had an artery that was completely blocked and not reopened. Because I went through a rehab program where I developed the collateral arteries to take over the function of that artery, now I can perform. I'm playing tennis/ I'm doing aerobic exercises every other day. I can perform fully in my life's functions as a Judge, where there is a lot more stress than in other vocations. So I have personal experience in this. Now a judge can't put aside his personal experiences in life in deciding cases. I have decided as a matter of law. I have decided the Plaintiff failed to prove that he had a permanent disability resulting from his heart attack.

   *Katz, supra,* at 30.

tinuing medical condition, persisting beyond the period immediately after the operation, that substantially limited one or more of his major life activities." *Katz, supra,* at 32. Evidently, *Katz* does not much alter the state of the law regarding disability under the ADA. It simply reiterates that the determination of disability is a fact-based inquiry which must be conducted on an individual basis, *see Abbott, supra,* at 941; *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir.1996), and that the issue of whether the condition is temporary or permanent is not *determinative* of disability. Duration is simply *one* of the factors, together with nature, severity and long-term impact, used to determine whether the impairment substantially limits major life activities.

In the instant case there is no controversy with respect to the fact that plaintiff's condition was temporary. I agree with plaintiff that this is not determinative of her claim. Nevertheless, the Court finds that plaintiff failed to prove how her condition substantially limits her major life activities in the face of defendant's contentions that it does not. Unlike the plaintiff in *Katz,* the plaintiff in this case makes conclusory allegations that she is an ADA disabled individual because she suffered a work-related ear injury for which she received treatment.[3] However, in order to sustain her case she must do more than this. Allegations of impairment, without more, do not establish a prima facie case of discrimination under the ADA. As explained above, plaintiff must also establish how this impairment substantially interferes with her major life activities. While plaintiff has proved the impairment prong, she has failed to establish the "substantially limit" prong. The record is bereft of evidence to this effect and plaintiff has therefore failed to meet her burden. *See Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (5th Cir.1996) (holding that although employee's breast cancer was an "impairment" within the meaning of the ADA, she failed to establish that it substantially limited major life activity so as to establish ADA claim).

**B. "Record of such an impairment"**

Section 12102(2)(B) of the ADA provides that plaintiff will be considered disabled under the ADA if she has a record of disability. Subsection (B), however, must be read in conjunction with subsection(A): "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of *such* an impairment ...." 42 U.S.C. § 12101(2)(A)–(B) (emphasis added). Plaintiff contends that defendant was aware of her hearing condition since August 30, 1995 and that "this establishes ample record of her condition." (P's Reply, at 4) (Dkt.# 32). While her employer's awareness might be enough to establish a record of her *condition,* it does not, by any means, establish a record of *disability.* Again, evidence of impairment alone is not enough to establish disability. *See Robinson v. Global Marine Drilling Co.* 101 F.3d 35, 37 (5th Cir. 1996) ("While these facts are evidence of a history of an impairment, they are not evidence of a history of a disability."). "[I]n order to make out a claim for discrimination based on a record of impairment, the plaintiff must show that at some point in the past, she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1121 (5th Cir., 1998). *See also Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 (7th Cir. 1998) ("What § 12101(2)(B) requires is not simply a diagnosis, but a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities."). As explained in the previous section of this opinion, while plaintiff has established she suffered from a hearing impairment, she has not established disability under the ADA. Plaintiff failed to establish substantial limitation to a major life activity under subsection (A), and she has failed under subsection (B) as well.

---

**3.** In *Katz* there was evidence of the ways in which plaintiff's heart attack, angioplasty procedure and recovery thereupon substantially limited his major life activities. Plaintiff testified to having trouble breathing and walking and his inability to obtain comparable employment until only a few months before the trial. *See Katz, supra,* at 29.

**WHEREFORE**, the Court **DENIES** plaintiff's motion for summary judgment (Dkt.# 19) and **GRANTS** defendant's cross-motion (Dkt.# 24). Judgment in favor of defendants shall be entered dismissing plaintiff's ADA claims.

After dismissal of plaintiff's foundational federal claims, the Court loses jurisdiction to entertain plaintiff's supplemental claim. *See Camelio v. American Fed'n,* 137 F.3d 666, 672 (1st Cir.1998); *Labickas v. Arkansas State Univ.,* 78 F.3d 333, 334 (8th Cir.1996) **WHEREFORE**, plaintiff's supplemental claim is hereby **DISMISSED without prejudice.**

**IT IS SO ORDERED.**